**08 CV 5619**



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JANICE DOTSON, Individually,
and JOHN DOTSON, Individually,
husband and wife,

            Plaintiff,           :

                                 :

vs.                                 :

                                 :     Civil Action No. _____

MERCK & CO., INC.,         :

             Defendants.       :

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, JANICE DOTSON and JOHN DOTSON, through their undersigned attorneys Lopez McHugh, LLP, sue Defendant Merck & Company, Inc., and allege as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, as complete diversity exists between Plaintiffs and Defendant. Plaintiffs are residents of the State of West Virginia, and Defendant is incorporated and has its primary place of business in the State of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2.    Venue is proper within this district pursuant to Case Management Order No.3, filed November 1, 2006, signed by John F. Keenan, allowing Fosamax-related cases to be filed directly in the Southern District of New York.

## II. PARTIES

3.  Plaintiff JANICE DOTSON was born October 16, 1939. At all relevant times
    Plaintiff JANICE DOTSON was a resident of the State of West Virginia , and
    used FOSAMAX from at least on or about 2003 until on or about 2005. Plaintiff
    JANICE DOTSON is and was at all times relevant to this action married to JOHN
    DOTSON and they were residents of the state of West Virginia at all times
    material to this action.

4.  Defendant is a corporation organized and existing under the laws of the State of
    New Jersey, with its principal place of business in New Jersey. The Defendant's
    registered office is at 820 Bear Tavern Road, City of West Trenton, Mercer
    County, New Jersey.

5.  Defendant was at all relevant times authorized to conduct business in the State of
    West Virginia.

6.  At all times relevant Defendant regularly transacted business in the State of West
    Virginia and continues to do so.

7.  At all relevant times Defendant, through its agents, servants, employees and
    apparent agents was the designer, manufacturer, marketer, distributor and seller of
    FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the
    effects of osteoporosis.

8.  Defendant, either directly or through its agents, apparent agents, servants or
    employees, at all relevant times, sold and distributed FOSAMAX in the State of
    West Virginia for the treatment or prevention of osteoporosis, Paget's Disease and
    other off-label uses.

9.  Defendant derives substantial revenue from pharmaceutical products used or
    consumed in the State of West Virginia.

10. Defendant expected, or should have expected, that its business activities could or
    would have consequences within the State of West Virginia.

### III. SUMMARY OF THE CASE

11.    Defendant, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, and other off-label uses.

12.    As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff JANICE DOTSON, have suffered and may continue to suffer severe and permanent personal injuries to the jaw bone, including but not limited to osteonecrosis of the jaw and other diagnoses of irreversible damage to the jaw.

13.    Defendant concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff JANICE DOTSON, other consumers, and the medical community.

14.    Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

15.    As a result of Defendant's actions and inaction, Plaintiff JANICE DOTSON was injured due to her ingestion of FOSAMAX, which has caused and will continue to cause Plaintiff various injuries and damages. Plaintiffs accordingly seek compensatory damages.

### IV. FACTUAL BACKGROUND

16.    At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

17.    In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's Disease.

18.    FOSAMAX falls within a class of drugs known as bisphosphonates.

Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

19.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Boniva); risedronate (Actonel); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDR for FOSAMAX confirms that the molecule contains a nitrogen atom.

20.    Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Merck knew or should have known that FOSAMAX, as a nitrogenous bisphosphonate, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

21.    Merck knew and or should have known that bisphosphonates, including FOSAMAX, inhibit endothelial cell function. Similarly, Merck knew or should have known that bisphosponates also inhibit vascularization of the affected area and induce ischemic changes specific to patients mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

22.    Merck also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That in turn can progress to

widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

23.    Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

24.    Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

25.    Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study risk of osteonecrosis of the jaw relative to FOSAMAX. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

26.    Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

27.    Since FOSAMAX was released, the FDA has received a number of reports of osteonecrosis of the jaw among users of FOSAMAX.

28.    On August 25,2004, the FDA posted its ODS (Office of Drug Safety) Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

29.    As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX.

30.    As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Merck to specifically warn about the risk of osteonecrosis of the jaw. Merck has refused to accede to the FDA's request and, to this day, still

does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

31. Rather than warn patients, and despite knowledge known by Defendant about increased risk of osteonecrosis of the jaw in patients using FOSAMAX, Defendant continues to defend FOSAMAX and minimize unfavorable findings.

32. FOSAMAX is one of Defendant's top selling drugs. Averaging more than $3 billion a year in sales.

33. Consumers, including Plaintiff JANICE DOTSON, who have used FOSAMAX for the treatment or prevention of osteoporosis, Paget's Disease and/or other off-label uses, have several alternative safer products available to treat their conditions.

34. Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiffs, or the medical community, of such risks.

35. In the design, manufacture, labeling and marketing of FOSAMAX, the Defendants engaged in numerous acts that constituted violations of federal statutes and regulations, including but not limited to:

    a. The labeling lacked adequate information on the use of the drug Fosamax (21 C.F.R. Section 201.56(a) and (d));

    b. The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation, osteonecrosis of the jaw, and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug (21 C.F.R. 201.57(e));

    c. There was inadequate information for patients for the safe and effective use of Defendant's drug (21 C.F.R. 201.57(f)(2));

    d. There was inadequate information regarding special care to be exercised by the Plaintiff's doctors for safe and effective use of Defendant's drug (21 C.F.R. 201.57(f)(1));

    e. The labeling was misleading and promotional (21 C.F.R. 201.56(b)); and

f.    Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Ct, 21 U.S.C. §331.

36.    Plaintiff JANICE DOTSON has suffered from mental anguish from the knowledge that she will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

37.    Plaintiff JANICE DOTSON was prescribed and began taking FOSAMAX on or about April 2003.

38.    Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

39.    As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe personal injury to her jaw.

40.    Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

41.    Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

42.    Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

43.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX. The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

44.    As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, ommissions, and misrepresentations.

## V. COUNTS

## COUNT I: NEGLIGENCE

45.    Plaintiffs re-allege the above paragraphs as if fully set forth herein.

46.    Defendant owed Plaintiffs, and other consumers, a duty
to exercise reasonable care when designing, manufacturing, marketing,
advertising, distributing, and selling FOSAMAX.

47.    Defendant failed to exercise due care under the circumstances and therefore
breached this duty by:

   a. failing to properly and thoroughly test FOSAMAX before
releasing the drug to market;

   b. failing to properly and thoroughly analyze the data resulting from
the pre-marketing tests of FOSAMAX;

   c. failing to conduct sufficient post-market testing and surveillance of
FOSAMAX;

   d. designing, manufacturing, marketing, advertising, distributing, and
selling FOSAMAX to consumers, including Plaintiff, without an
adequate warning of the significant and dangerous risks of FOSAMAX
and without proper instructions to avoid the harm which could
foreseeably occur as a result of using the drug;

   e. failing to exercise due care when advertising and promoting
FOSAMAX; and

   f. negligently continuing to manufacture, market, advertise, and distribute
FOSAMAX after Defendant knew or should have known of its adverse effects.

48.    As a direct and proximate consequence of Defendant's actions, omissions, and
misrepresentations, Plaintiff JANICE DOTSON sustained significant and
permanent injury to her jaw. In addition, Plaintiff required and will continue to
require healthcare and services. Plaintiffs have incurred and will continue to incur
medical and related expenses. Plaintiff also has suffered and will continue to
suffer diminished capacity for the enjoyment of life, a diminished quality of life,
increased risk of premature death, aggravation of preexisting conditions and
activation of latent conditions, and other losses and damages. Plaintiffs direct

medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

49.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiffs to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

50.    Plaintiff JANICE DOTSON'S spouse, JOHN DOTSON, sustained a loss of consortium as a result of the injuries sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support and care. His losses are permanent and continuing in nature.

51.    The Plaintiffs' allegations in this Count include breaches of duties that are parallel to the requirements set forth in the numerous federal statutes and regulations which were violated by the Defendant.

## COUNT II: STRICT LIABILITY

52.    Plaintiffs re-allege the above paragraphs as if fully set forth herein.

53.    Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiffs.

54.    Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or Promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

55.    Plaintiff JANICE DOTSON used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

56.    FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable

manner.

57.   FOSAMAX was defective in its design and was unreasonably dangerous in that
      its unforeseeable risks exceeded the benefits associated with its design or
      formulation.

58.   FOSAMAX was defective in design or formulation in that it posed a greater
      likelihood of injury than other similar medications and was more dangerous than
      an ordinary consumer could reasonably foresee or anticipate.

59.   FOSAMAX was defective in its design and was unreasonably dangerous in that it
      neither bore nor was packaged with nor accompanied by warnings adequate to
      alert consumers, including Plaintiff, of the risks described herein, including, but
      not limited to, the risk of osteonecrosis of the jaw.

60.   Although Defendant knew or should have known of the defective nature of
      FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so
      as to maximize sales and profits at the expense of the public health and safety. By
      so acting, Defendant acted with conscious and deliberate disregard of the
      foreseeable harm caused by FOSAMAX.

61.   Plaintiff and or her physician (s) could not, through the exercise of reasonable
      care, have discovered FOSAMAX's defects or perceived the dangers posed by the
      drug.

62.   As a direct and proximate consequence of Defendant's conduct, Plaintiff JANICE
      DOTSON sustained significant and permanent injury to her jaw. In addition,
      Plaintiff required and will continue to require healthcare as a result of her injury.
      Plaintiffs have incurred and will continue to incur medical and related expenses.
      Plaintiff also has suffered and will continue to suffer diminished capacity for the
      enjoyment of life, a diminished quality of life, increased risk of premature death,
      aggravation of preexisting conditions and activation of latent conditions, and
      other losses and damages. Plaintiffs' direct medical losses and costs include care
      for hospitalization, physician care, monitoring, treatment, medications, and
      supplies. Plaintiff has incurred and will continue to incur mental and physical pain
      and suffering and loss of wages and wage-earning capacity.

63.   Defendant's conduct as described above was committed with knowing, conscious,

wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiffs to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

64.    Plaintiff JANICE DOTSON'S spouse, JOHN DOTSON, sustained a loss of consortium as a result of the injuries sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support and care. His losses are permanent and continuing in nature.

65.    The Plaintiffs' allegations in this Count include breaches of duties that are parallel to the requirements set forth in the numerous federal statutes and regulations which were violated by the Defendant.

## COUNT III: BREACH OF EXPRESS WARRANTY

66.    Plaintiffs re-allege the above paragraphs as if fully set forth herein.

67.    Defendant expressly represented to Plaintiffs, other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, was of merchantable quality, did not produce any dangerous side effects, and had been adequately tested.

68.    FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

69.    At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

70.    Plaintiffs, other consumers, and the medical community relied upon Defendant's express warranties.

71.    As a direct and proximate result of Defendant's actions, Plaintiff JANICE DOTSON sustained serious significant and permanent injury to her jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of her injury. Plaintiffs have incurred and will continue to incur medical

and related expenses as a result of Plaintiff JANICE DOTSON'S injury. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff JANICE DOTSON has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

72.     Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff JANICE DOTSON, thereby entitling Plaintiffs to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

73.     Plaintiff JANICE DOTSON'S spouse, JOHN DOTSON, sustained a loss of consortium as a result of the injuries sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society, companionship, services, support and care. His losses are permanent and continuing in nature.

74.     The Plaintiffs' allegations in this Count include breaches of duties that are parallel to the requirements set forth in the numerous federal statutes and regulations which were violated by the Defendant.

## COUNT IV: BREACH OF IMPLIED WARRANTY

75.     Plaintiffs re-allege the above paragraphs as if fully set forth herein;

76.     Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

77.     At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

78.     Defendant was aware that consumers, including Plaintiff JANICE DOTSON,

would use FOSAMAX for treatment or prevention of osteoporosis or Paget's Disease and for other off-label purposes.

79.  Plaintiffs and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

80.  Defendant breached its implied warranty to consumers, including Plaintiffs; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

81.  Consumers, including Plaintiffs, and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

82.  FOSAMAX reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

83.  As a direct and proximate result of Defendant's action, Plaintiff JANICE DOTSON sustained significant and permanent injury to her jaw. In addition, Plaintiff required and will continue to require healthcare and services as a result of her injury. Plaintiffs have incurred and will continue to incur medical and related expenses as a result of Plaintiff JANICE DOTSON'S injury. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

84.  Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

85.  Plaintiff JANICE DOTSON'S spouse, JOHN DOTSON, sustained a loss of consortium as a result of the injuries sustained by his wife incident to the use of FOSAMAX. His damages include, but are not limited to, a loss of society,

companionship, services, support and care. His losses are permanent and
continuing in nature.

86.   The Plaintiffs' allegations in this Count include breaches of duties that are parallel
to the requirements set forth in the numerous federal statutes and regulations
which were violated by the Defendant.

## COUNT V: FRAUDULENT MISREPRESENTATION

87.   Plaintiffs re-allege the above paragraphs as if fully set forth herein.

88.   Defendant made fraudulent misrepresentations with respect to FOSAMAX in the
following particulars:

a. Defendant represented through its labeling, advertising, marketing
materials, detail persons, seminar presentations, publications, notice letters, and
regulatory submissions that FOSAMAX had been tested and found to be safe and
effective for the treatment of osteoporosis and Paget's Disease; and

b. Defendant represented that FOSAMAX was safer than other alternative
medications.

89.   Defendant knew that its representations were false, yet it willfully, wantonly, and
recklessly disregarded its obligation to provide truthful representations regarding
the safety and risk of FOSAMAX to consumers, including Plaintiffs, and the
medical community.

90.   The representations were made by Defendant with the intent that doctors and
patients, including Plaintiffs, rely upon them.

91.   Defendant's representations were made with the intent of defrauding and
deceiving Plaintiffs, other consumers, and the medical community to induce and
encourage the sale of FOSAMAX.

92.   Plaintiffs, Plaintiff's doctors, and others relied upon the representations.

93.   Defendant's fraudulent representations evinced its callous, reckless, willful, and
depraved indifference to the health, safety, and welfare of consumers, including
Plaintiff.

94.    As a direct and proximate result, Plaintiff JANICE DOTSON sustained
       significant and permanent injury to her jaw. In addition, as a result of her injury,
       Plaintiff, JANICE DOTSON required and will continue to require healthcare and
       services, and Plaintiffs have incurred and will continue to incur medical and
       related expenses. Plaintiff also suffered and will continue to suffer diminished
       capacity for the enjoyment of life, a diminished quality of life, increased risk of
       premature death, aggravation of preexisting conditions and activation of latent
       conditions, and other losses and damages.    Plaintiff's direct medical losses and
       costs include care for hospitalization, physician care, monitoring, treatment,
       medications, and supplies. Plaintiff has incurred and will continue to incur mental
       and physical pain and suffering and   loss of wages and wage-earning capacity.

95.    Defendant's conduct as described above was committed with knowing, conscious,
       wanton, willful, and deliberate disregard for the value of human life and the rights
       and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive
       damages so as to punish Defendant and deter it from similar conduct in the future.

96.    Plaintiff JANICE DOTSON'S spouse, JOHN DOTSON, sustained a loss of
       consortium as a result of the injuries sustained by his wife incident to the use of
       FOSAMAX. His damages include, but are not limited to, a loss of society,
       companionship, services, support and care. His losses are permanent and
       continuing in nature.

97.    The Plaintiffs' allegations in this Count include breaches of duties that are parallel
       to the requirements set forth in the numerous federal statutes and regulations
       which were violated by the Defendant.

## COUNT VI: FRAUDULENT CONCEALMENT

98.    Plaintiffs re-allege the above paragraphs as if fully set forth herein.

99.    Defendant fraudulently concealed information with respect to FOSAMAX in the
       following particulars:

a. Defendant represented through its labeling, advertising, marketing
materials, detail persons, seminar presentations, publications, notice
letters, and regulatory submissions that FOSAMAX was safe and
fraudulently withheld and concealed information about the substantial
risks of using FOSAMAX; and

b. Defendant represented that FOSAMAX was safer than other alternative
medications and fraudulently concealed information which demonstrated
that FOSAMAX was not safer than alternatives available on the market.

100.    Defendant had sole access to material facts concerning the dangers and
unreasonable risks associated with FOSAMAX.

101.    Defendant's concealment of information about the risks associated with taking
FOSAMAX was intentional, and the representations made by Defendant were
known by Defendant to be false.

102.    The concealment of information and the misrepresentations about FOSAMAX
were made by Defendant with the intent that doctors and patients, including
Plaintiffs, rely upon them.

103.    Plaintiff JANICE DOTSON, Plaintiffs' doctors, and others relied upon the
representations and were unaware of the substantial dental and oral risks
associated with taking FOSAMAX that Defendant had concealed from them.

104.    As a direct and proximate result of Defendant's fraudulent concealment and
misrepresentations, Plaintiff JANICE DOTSON suffered significant and
permanent injury to her jaw as well as severe and permanent injuries, including
pain, mental and physical anguish and suffering, a diminished capacity for the
enjoyment of life, aggravation of preexisting conditions and activation of latent
conditions, and a fear of developing other harmful conditions or problems as a
result of the injury. Plaintiff has suffered and will continue to suffer a loss of
wages and wage-earning capacity and has incurred expenses for medical care and
treatment due to the injuries caused by FOSAMAX.

105.    Defendant's conduct as described above was committed with knowing, conscious,
wanton, willful, and deliberate disregard for the value of human life and the rights
and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive

damages so as to punish Defendant and deter it from similar conduct in the future.

106.  Plaintiff JANICE DOTSON'S spouse, JOHN DOTSON, sustained a loss of
      consortium as a result of the injuries sustained by his wife incident to the use of
      FOSAMAX. His damages include, but are not limited to, a loss of society,
      companionship, services, support and care. His losses are permanent and
      continuing in nature.

107.  The Plaintiffs' allegations in this Count include breaches of duties that are parallel
      to the requirements set forth in the numerous federal statutes and regulations
      which were violated by the Defendant.

## GLOBAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant, as follows:

a. compensatory damages on each cause of action;

b. punitive damages on each cause of action;

c. reasonable attorneys' fees where recoverable;

d. costs of this action; and

e. such other additional and further relief as the Court may deem necessary,
   appropriate, and just.

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

Dated: June 19, 2008                    Respectfully submitted,

                                        James J. McHugh
                                        Regina Sharlow Johnson
                                        Niki A. Trunk
                                        LOPEZ MCHUGH, LLP
                                        712 East Main Street Suite 2A

Moorestown, New Jersey 08057
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone:     (215) 952-6910
Facsimile:     (215) 952-6914

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**In re: FOSAMAX ®**                        :        Docket No. 06-MDL 1789

**PRODUCTS LIABILITY LITIGATION** :

                                          :

                                          :        ORDER FOR ADMISSION
                                          :        PRO HAC VICE
                                          :

                                          :

Considering the Certificate of Good Standing submitted by counsel, IT IS

HEREBY ORDERED that:

> Regina Sharlow Johnson
> Lopez McHugh, LLP
> 712 E. Main Street, Suite 2A
> Moorestown, NJ 08057
> Phone: (856) 273-8500
> Facsimile: (856) 273-8502
> Email: RJohnson@lopezmchugh.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  5-12-08
```

is admitted to practice pro hac vice as counsel for plaintiffs in the above-referenced MDL

proceeding.

Signed this _12_ day of _May_, 2008, at _New York_, New

York.

_John F. Keenan_
UNITED STATES DISTRICT COURT JUDGE

MICROFILMED

MAY 1 3 2008 –9 00 AM



ORIGINAL-WHITE
DUPLICATE-YELLOW /
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED FROM:

TRIPLICATE-PINK

E 654907

Fund
6855XXX
604700

Deposit Funds
Registry Funds
General and Special Funds

DATE:                                          20

| | Cash | Check | M.O. | Credit |

DEPUTY CLERK